**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

LAMONT C. FITCH                                                                         PLAINTIFF

v.                                                             CIVIL ACTION NO. 4:08CV-P76-M

CITY OF LEITCHFIELD et al.                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendants Grayson County Detention Center (GCDC), Darwin Dennison, Jason

Woosley, Andy Cain, Kim Willis, Gail Basham, Morris Basham, Kim Stephenson, Donnie

Stewart, Randy Cook, Rita Wilson, and Outis Meredith have moved for summary judgment

(DN 219).   Plaintiff, Lamont C. Fitch, initially asked for an extension of time in which to file his

response.  The Court granted his request, but Plaintiff has not filed a response.[1]  For the

following reasons, the Court will grant the motion for summary judgment.

## I. SUMMARY OF CLAIMS

Plaintiff filed his complaint against the City of Leitchfield, Kentucky; GCDC; Jailer

Darwin Dennison; Chief Deputy Jason Woosley; Deputies Andy Cain, Kim Willis, Gail Basham,

Morris Basham, and Randy Cook; John Doe; and two Jane Does (DN 2).[2]  Plaintiff later

amended his complaint to add Defendants Donnie Stewart and Kim Nicholas (n/k/a Kim

Stephenson).  This Court granted the City of Leitchfield's motion for summary judgment, and

dismissed the City as a Defendant (DNs 81 & 82).

---

[1] He did file a "Declaration" within the allotted time (DN 232), but it is not responsive to
Defendants' motion.

[2] Plaintiff filed his complaint in the Eastern District of Kentucky.  That Court conducted
the initial review and ordered service of summons.  Thereafter, it transferred the case to this
Court based on Plaintiff's motion for change of venue (DN 28).

At the time he filed his complaint, Plaintiff was confined at GCDC as a federal pretrial detainee. The complaint alleged that on January 19, 2007, Defendant John Doe (later amendments reveal this Defendant to be Donnie Stewart) and other GCDC employees retaliated against him by discarding his religious beanie (kufi). The retaliation allegedly was prompted because they were annoyed that he had a large number of legal documents. He alleged that on April 4 and 13, 2007, his legal mail was opened outside of his presence. He alleged that Defendants GCDC, Woosley, Dennison, and Morris Basham conspired to encourage racial violence via inmate "pitting." He further alleged that on May 30, 2007, his right hand "was injured due to an instigated altercation between me and several non-african detainees whom I had to defend against." He alleged that on June 26, 2007, Defendant Morris Basham conspired to instigate another racial altercation in the law library, which resulted in Plaintiff being expelled from the law library. He further alleged that on August 8, 2007, Defendants Cain and Willis opened his legal mail outside his presence and then delivered it to him via another inmate, but that a white federal pretrial detainee's legal mail was opened in front of him and was received directly from Defendant Cain. Plaintiff also alleged that on September 4, 2007, Defendants Cook and GCDC opened and withheld legal mail consisting of *Brady* materials to be used at his trial, thereby sabotaging his defense efforts and resulting in his conviction.

Plaintiff further alleged that on January 7, 2008, Defendants Gail Basham and Woosley conspired to ban him from the law library on trumped up charges. He stated that on January 29, 2008, he was attacked from behind by another inmate and he was not allowed to "defend/retaliate because Defendants Andy Cain and several GCDC immediately got between me (Fitch) and the informant inmate, thus protecting his right to be safe and secure." He later

2

was granted leave to amend his complaint to add the following:

> I (Fitch) was unable to defend/retaliate, nor was I protected by my
> jailers.*** ***GCDC Deputies and staff claim that I was struck
> from behind by an inmate (who is a known informant and flunky
> for GCDC deputies.  I never saw who struck me.  However, when I
> turned around after being struck all I saw was deputies behind me.

*See* DN 108.  He also alleged in his original complaint that the "conspired misconduct of the

Defendants created a violent and hostile environment around me which was/is a continuation of

the retaliation campaign leveled at" Plaintiff; that GCDC and Defendant Dennison failed to train

their subordinates; and that Defendants "catered to a systematic targeting program of the U.S.

Department of Justice, and privileged PACs, when they (Defendants) entered the conspiracy by

plotting against me (Fitch) as well while I was in their custody."

The Court later allowed Plaintiff to supplement his complaint with individual-capacity

claims against Rita Wilson and Outis Meredith.  *See* DN 155.  In the supplemental complaint,

Plaintiff alleged that on February 29, 2008, Defendant Wilson slammed his hand in the food slot

of his door and that from January 29, 2008, to March 19, 2008, Defendant Meredith served him

cold soup on dirty trays.

Plaintiff's handwritten complaint stated that it was brought under 42 U.S.C. § 1983 for

violations of the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, state law, and 18

U.S.C. §§ 241, 242.  On August 21, 2009, this Court dismissed Plaintiff's claims under Title 18

and his requests for injunctive and declaratory relief for failure to state a claim (DN 109).

## II. ANALYSIS

### A.    Summary-judgment standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

3

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is

"entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

Plaintiff's complaint (DN 2) is verified. Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. Fed. R. Civ. P. 56(c)(4) (affidavits opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**B.     Analysis**

### 1.     Claims related to the lost kufi

Defendants argue that there is no evidence that Defendant Stewart discarded his kufi. However, Defendants argue that, assuming that Defendant Stewart did in fact deliberately discard Plaintiff's kufi, Plaintiff's claim that his kufi was discarded in retaliation for possessing a large number of legal documents fails because he has not put forth any evidence that a person of ordinary firmness would be deterred from continuing to engage in a protected activity in the face of having his kufi discarded. Defendants further argue that Plaintiff has not put forth any

evidence that his possession of many legal documents was a factor causing the disappearance of his kufi. With regard to Plaintiff's claim that the loss of his kufi violated his First Amendment right to practice his religion, Defendants argue that the loss of a kufi does not rise to a constitutional violation because it did not place a substantial burden on his ability to exercise a central religious belief or practice.

Finally, Defendants argue that no due process violation occurred with regard to the lost kufi because no due process was owed to him for Defendant Stewart's alleged intentional conduct. Moreover, Defendants point to the fact that when they learned that Plaintiff's kufi was missing from the box containing his legal papers, GCDC denied that it had discarded the kufi but informed Plaintiff that his family would be allowed to send him a replacement. And, according to his deposition testimony, Plaintiff did receive six replacement knitted hats within two weeks.

The Court finds that Plaintiff's claims related to his missing kufi fail because he has not produced any evidence that his kufi was discarded or deliberately lost by any Defendant. According to Plaintiff's pretrial memorandum (DN 208),

> G.C.D.C. deputies didn't want to transport my court ordered box of legal papers, along with my person, from the Federal Medical Center (FMC) in Lexington, Kentucky on Jan. 19, 2007. I (Fitch) asserted my right to have these papers brought with me and this resulted in a verbal dispute with the escorting deputies before and after these deputies contacted their supervisor via cell phone. I was told that I'd learn to keep my mouth shut at G.C.D.C. I again was pulled into a verbal dispute with Captain Donnie Stewart over my having possession of my box of legal papers after he (Stewart) separated me from my papers and told me I'd get the box of legal papers whenever I get them. Upon receiving the box of legal papers days later I found that my religious beanie (kufi) that had been authorized and placed in the box as well by a federal chaplin, had been disgarded.

Attached to Defendants' motion is the following deposition testimony. When asked

whether he believed that the loss of his kufi was a deliberate act based on his perception of the

atmosphere at the time when GCDC employees took his box, Plaintiff responded:

> A No, I – it was – no, not on the perception of the atmosphere, but
> on the exchanges that me and the deputies had, and the guy [who]
> was waiting for me.
> * * *
> Q So you believe that – well, let me see if I can use a different
> word.  So you believe that you were deliberately deprived of your
> Kufi –
> A Right
> Q – with the Grayson County Detention Center –
> A Right.  They just didn't like my demeanor.
> Q – employees?
> A They didn't like my demeanor.  As far as they was concerned, I
> was – I was an inmate and I was out of place for speaking and being
> adamant and this, that.  Because I told them.  I was listening –
> Q So nobody said you're out of line, I want to take your Kufi and
> flush it down the toilet?
> A No.
> Q You just – they never said they were going to take it way.
> A They didn't say that.

Plaintiff's unsupported allegation that it was a deliberate act which caused his kufi to go

missing is further undercut by the fact that prison official's allowed him to receive replacement

hats shortly thereafter.

- *Retaliation*

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to

set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at

least in part, by the protected conduct.  *Id.*  The Court having found that the loss of Plaintiff's kufi

was not a deliberate act, there was no adverse action taken against Plaintiff to support a retaliation claim.

- **First Amendment**

The First Amendment prevents the government from prohibiting or excessively curtailing the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). First, Plaintiff has not shown that Defendants *knowingly* placed a substantial burden on his ability to practice his religion. *Muwwakkil v. Johnson*, No. 7:09CV00318, 2010 WL 3585983, at *7 (W.D. Va. Sept. 13, 2010). Moreover, the isolated incident Plaintiff describes in the complaint is not sufficient to implicate the Constitution. *See Randall v. McLeod*, No. 95-10106, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (per curiam) (affirming district court's dismissal of First Amendment claim based on plaintiff not getting a pork-free meal on two occasions); *White v. Glantz*, No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) (finding that an "isolated occurrence of being given two meals with green beans and bacon" did not violate a Muslim inmate's First Amendment rights); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (finding that an "isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion").

- **Religious Land Use and Institutionalized Persons Act**

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), offers heightened statutory protection. Plaintiff's complaint makes no mention of RLUIPA. However, other circuits have held that it is error for a district court not to consider a RLUIPA claim as well where a *pro se* plaintiff has alleged a constitutional freedom of religion claim. *See Smith v. Johnson*, 202 F. App'x 547, 549 (3d Cir. 2006) ("We apply the relevant law,

regardless of whether the pro se litigant has identified it by name"); noting that the Second and Tenth Circuits also have remanded to the district court for a determination under RLUIPA even where the RLUIPA was not alleged in the complaint). This Court will, therefore, consider whether Plaintiff has a claim under the RLUIPA as well.

Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).

For the same reason that Plaintiff's First Amendment claim fails, a RLUIPA claim also would fail. "As a key element of his free exercise claim, under either the First Amendment or RLUIPA, [Plaintiff] must demonstrate that in taking a specific action, prison officials knowingly placed a substantial burden on his ability to practice his religious beliefs." *Muwwakkil*, 2010 WL 3585983 at *7. Thus, "[o]fficials' accidental or negligent actions that impinge to some degree on an inmate's religious practice are insufficient to support an actionable constitutional claim or RLUIPA claim." *Id.* (citing *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006)).

- ***Due process***

Nor does Plaintiff's due process claim survive. The Supreme Court has held neither negligent nor intentional deprivation of an inmate's property violates the Due Process Clause if adequate remedies are available to compensate for the property loss. *Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (no due process claim for random and unauthorized deprivation of property, even if taking is intentional, so long as state provides inmate suitable post-deprivation remedy). Kentucky has adequate post-deprivation remedies for the confiscation or destruction of property, such as a tort action for conversion against individual defendants. *See Wagner v. Higgins*, 754 F.2d 186, 192 (6th Cir. 1985). Only where deprivation of property is caused by conduct pursuant to established procedure is pre-deprivation process required. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434-35, (1982) (employee's rights in fair employment claim terminated pursuant to state statute). Thus, Defendants are entitled to summary judgment on Plaintiff's due process claim also.

### 2. *Opening legal mail claims*

Plaintiff's complaint alleges that his legal mail was opened outside of his presence on four occasions in 2007: April 4, April 13, August 8, and September 4. Plaintiff does not allege in his complaint that he grieved the April 13, 2007, or the September 4, 2007, incident. Defendants state that they have been unable to locate any grievances filed by Plaintiff with regard to the alleged opening of his mail on April 13 or September 4, 2007. The Court finds that Plaintiff has offered no proof that his legal mail was opened outside of his presence on these two occasions.

Defendants argue that the instances in which Plaintiff's legal mail was opened outside of his presence were all accidental, and therefore do not rise to the level of a constitutional violation. Attached to the summary-judgment motion is a copy of the grievance Plaintiff filed after his legal

mail was opened on April 4, 2007. The response to that grievance was: "I talked to the lady that opened your mail. She just started doing it and did it by mistake. It should not happen anymore." Also attached to his complaint is a copy of the grievance Plaintiff filed after his legal mail was opened on August 8, 2007. The response was in pertinent part: "Opening it was an accident. You received a response from the girl that did it." Another response to Plaintiff's grievance regarding the opening of his legal mail on August 8, 2007, was as follows: "My name is Kim Willis J-67. I opened all of the mail on 8/8/07. I am new to working up front. I apologize for the error of opening your legal mail. It was not intentional. We have a large amount of mail and unfortunately mistakes can happen."

It thus appears from the record that Defendants' actions were merely negligent, which is not enough to sustain Plaintiff's constitutional claim. *See Wojnicz v. Davis*, 80 F. App'x 382, 384 (6th Cir. 2003); *Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003) (holding that prison officials did not violate a state inmate's due process rights by losing one piece of legal mail, where the loss was the result of negligence); *Hunter v. Welborn*, 52 F. App'x 277, 279-80 (7th Cir. 2002) (finding that a prisoner failed to state a denial of access to courts claim against a mail room supervisor for failing to forward legal mail where the supervisor's actions were merely negligent).

With regard to Plaintiff's claim that his equal protection right was violated when his legal mail was treated differently than white inmates' mail, Defendants argue that Plaintiff's deposition testimony shows that he was not discriminated against because of his membership in a protected class or that there was discriminatory intent. They point to the following testimony:

Q So are you saying --

A The exact same way.

Q -- That Grayson County Detention Center harassed the black inmates and opened up their legal mail?

A I don't know nothing about the black inmates. All I know about is Lamont Fitch.

Q Just you?

A Yeah. All I know is about me.

Q Are you saying it's because you're black?

A No. I'm just saying -- I'm just pointing out what they did and how they did it. You see what I'm saying?

Q So you're not saying it's because you're black.

A No.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To sustain an equal-protection claim, Plaintiff must allege, in part, that Defendants intentionally discriminated against him because he was a member of a protected class, *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987); *Purisch v. Tenn. Tech. Univ.,* 76 F.3d 1414, 1424 (6th Cir. 1996), or that he was treated differently than similarly situated individuals and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Plaintiff's deposition testimony shows the opposite, and Defendants are entitled to summary judgment on this claim.

   *3.* ***Eighth Amendment claim regarding inmate attack***[3]

---

[3] According to Plaintiff's complaint, at the pertinent time, he was a pretrial detainee. The Eighth Amendment prohibition against cruel and unusual punishment applies to pretrial detainees through the Fourteenth Amendment Due Process Clause. *See Bell v. Wolfish*, 441 U.S.

In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Deliberate indifference of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another." *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990).

In his complaint, Plaintiff alleged that on January 29, 2008, as he spoke to Defendant Andy Cain, "an informant inmate approached and struck me (Fitch) from behind, breaking my jaw in at least two different places; [and] I . . . was unable to defend/retaliate because Defendants Andy Cain and several G.C.D.C. [officers] immediately got between me . . . and the informant inmate, thus protecting his right to be safe and secure." Similarly, in his pretrial memorandum (DN 208), Plaintiff asserts, "On Jan. 29, 2008 Defendants Jason Woosley, Darwin Dennison, federal government agent Tim Brooks, *were responsible for an arranged assault upon my person from behind as I disputed with Defendant Andy Cain*." (Emphasis added). Plaintiff does not allege that Defendants should have been aware or were aware that the inmate who perpetrated the attack was a danger to Plaintiff.

Attached to the summary-judgment motion are two inmate incident reports from January 29, 2008. One filed by Officer Michael Sharer stated:

> Around 15:00 J-12 (Andy Cain) called on radio that there was a fight in green pod. I (J-81) responded and saw inmate Lamont Fitch getting up of the floor. J-12 said inmate Fitch had been struck by inmate Russell Carver III. Inmate Carver was taken to booking while inmate Fitch was taken to medical.

---

520, 535 n.16 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985). Thus, claims brought by pretrial detainees challenging conditions of confinement are analyzed under the Eighth Amendment.

The incident report filed by Defendant Cain stated:

> At 15:00 I Andrew Cain was passing mail in green pod. As inmates
> from 170 were coming down the hall way I witnesses Inmate
> Russell Carver III turn and punch Inmate Lamont Fitch in the side
> of the head. Inmate Fitch fell to the floor dazed. I radioed for
> assistance and got between inmate Carver and Inmate Fitch. Both
> Inmates responded to verbal orders to stop and separate. Officers
> arrived and escorted Inmate Carver to booking, and Inmate Fitch
> was escorted to medical. . . .

Defendants argue that Plaintiff has put forth no evidence that GCDC staff arranged the

assault by another inmate. Further, they argue that Plaintiff has not supported by the production

of any evidence that Defendants were aware of facts from which they could have drawn an

inference that the other inmate posed a substantial risk or harm or that they drew such an

inference. They further argue that Plaintiff's testimony seems to indicate that the only reason he

filed the instant action is because he was not allowed to assault inmate Carver in revenge:

> A [Deputy Tim Brooks] comes to see what's going on and asks me
> what happened. And I told you, I said, man, Tim Brooks, you already
> know what happened, and I explain to him. I was like, listen, and this
> is for the record. I said, let me explain something to you. That guy hit
> me from behind. And you know he hit me from behind, and I'm going
> to ask you this plain and simple. Let me get my fair one with this guy
> for doing that to me **or I'm going to file a complaint on you.** He
> laughed and said no, we can't do that. Go and file your complaint.\*\*\*

The Court finds that Plaintiff has offered no proof that the attack on him by another

inmate was set up by any Defendant. In setting forth a claim of conspiracy, Plaintiff cannot rely

on broad or conclusory allegations. *See Dennis v. Sparks*, 449 U.S. 24, 27-36 (1980); *Scott v.*

*Norton*, 96 F. App'x 378, 380 (6th Cir. 2004) (bare assertion of a conspiracy by prison inmates is

insufficient to state a conspiracy claim against prison officials); *McKinley v. Bowlen*, 8 F. App'x

488, 493 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175-76 (6th Cir. 1996). On the contrary,

he must allege with particularity and present material facts which show that the purported

conspirators reached some understanding or agreement or plotted, planned and conspired together

to deprive plaintiff of a protected federal right.  *See Chicarelli v. Plymouth Garden Apartments*,

551 F. Supp. 532, 539 (E.D. Pa. 1982).  This, Plaintiff has failed to do.  The Court finds that

Defendants are entitled to summary judgment on this claim as well.

### 4. *Eighth Amendment claim regarding totality of the circumstances*

Plaintiff alleged that the totality of his conditions at GCDC violated his constitutional

rights.  In particular, he alleges that on May 30, 2007, his right hand was injured in a instigated

altercation where Defendants Dennison and Woosley were responsible for strategically removing

all of the black inmates from the area except him; that on June 26, 2007, Defendant Morris

Basham conspired to instigate another racial altercation by arranging for Plaintiff and one of the

May 30, 2007, inmate combatants to be in the law library at the same time; that on February 28,

2008, Defendant Wilson assaulted him by slamming his hand with the steel food slot; and that on

March 4, 2008, Plaintiff was positioned for another attack by a white supremacist inmate, which

did not occur because the other inmate alerted him in writing.

The Sixth Circuit has stated that it "refuses to conduct a totality of the circumstances

analysis in Eighth Amendment cases."  *Schrader v. Collins*, No. 97-4471, 1998 WL 863427, at *2

(6th Cir. Nov. 23, 1998) (per curiam) (citing *Thompson v. County of Medina, Ohio*, 29 F.3d 238,

242 (6th Cir. 1994); *Walker v. Mintzes*, 771 F.2d 920, 925-26 (6th Cir. 1985)).  Therefore,

Plaintiff must demonstrate that at least one of the conditions of confinement, in and of itself,

violates the Eighth Amendment, although an exception does exist in circumstances when some

conditions viewed together have a "'mutually enforcing effect that produces the deprivation of a

15

single, identifiable human need such as food, warmth, or exercise.'" *Schrader*, at *2 (quoting

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

With regard to his claim that his right hand was injured due to an instigated altercation,

Defendants point to Plaintiff's deposition testimony which undercuts Plaintiff's argument that

Defendants Dennison and Woosley were involved in that episode at all.  Plaintiff's deposition

testimony indicates that it was Mexican inmates who were responsible for the relocation of black

inmates, except for Plaintiff, away from the pod:

> Q Are you telling me that the Mexicans were writing out[4] people so
> they could have that cell to themselves?
> A Yeah, so they had their number up.  Yeah.  They wanted the
> whole pod to theirself.

Plaintiff has provided no evidence that Defendant Morris Basham conspired to instigate

any racial altercation on June 26, 2007, or that Defendants Gail Basham and Woosley conspired

to ban him from the law library as he alleged in his complaint.

With regard to Plaintiff's allegation that Defendant Wilson slammed his hand, Defendants

point to five incident reports made on that date suggesting that any injury to Plaintiff's hand was

due to Plaintiff hitting his hand against the wall after Defendant Wilson closed the food slot and

walked away.  The first one made by Defendant Wilson stated that when she told Plaintiff that his

form to have copies made needed to go to the commissary, Plaintiff said that she was trying to

cause trouble, and that as she began walking away from the cell door Plaintiff yelled through the

bean hole "'You fat racist whore'" whereupon Defendant Wilson "turned around and closed the

---

[4] "Writing out" was explained by Plaintiff as meaning a process by which inmates could inform guards that other inmates were causing trouble and request the troublesome inmates to be removed.

bean hole.  Inmate was looking through bean hole when it was shut."

Her next incident report stated,

> Approximately 5 minutes after beanhole was closed inmate stated
> yelling 'you shut the slider on my finger.  Inmate did not yell or say
> anything at the time the bean hole was shut. . . I went to check on
> the inmate, he proceeded to yell you racist bitch . . . At this point I
> did not attempt to talk to inmate any further.  Inmate proceeded to
> scream and yell hitting the cell door with what sounded like his fist.
> He hit the cell door several times.

An incident report filed by another officer detailed the conversation regarding the copy request,

and stated, "We started to walk away [Plaintiff] called Miss Rita a Fat Racist Whore and

continued to screem at her kicking and hitting the door and walls of the cell."  An incident report

from Defendant Nicholas stated that she heard Plaintiff yell "You fat racist whore" and a

beanhole close, and then approximately 15 minutes later she could hear Plaintiff yell for "[a

nurse] because Defendant Wilson had closed the beanhole on his hand.  He continued by beating

on the cell door and yelling what he was going to do ....having [Defendant Wilson] on the news

and sue."  An incident report from Defendant Woosley stated:  "Moved inmate Fitch to isolation

from medical.  Inmate Fitch is continually interrupting medical services by yelling though his

door and bean hole, repeatedly kicking and hitting the cell door so much that he had to have his

hand x-rayed for possible breaks."  Plaintiff has failed to contradict the evidence submitted by

Defendants that his hand was not injured by any action of Defendant Wilson.

Defendants point out that Plaintiff had not made any allegation regarding an attempted

inmate attack on March 4, 2008, and cannot raise a claim now.  The Court agrees.

Finally, Defendants argue that cold food is hardly a constitutional claim, and in fact

numerous cases hold that cold food is an ordinary incident in prison life.  The Court agrees that

the claim Plaintiff makes with regard to the soup Defendant Meredith served him does not rise to the level of a constitutional violation. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 404-05 (6th Cir. 1999) (cataloging cases holding that being served cold food is not a constitutional violation).

Plaintiff has not shown that his Eighth Amendment rights were violated in any of the ways alleged in his complaint. Defendants are entitled to summary judgment on his Eight Amendment claims as well.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendants are entitled to judgment as a matter of law. The motion for summary judgment (DN 219) is **GRANTED**.

Date:

cc:     Plaintiff, *pro se*
       Counsel of record
4414.009